Opinion filed August 29, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00200-CV

_____

## GARY DOMEL AND KIM DOMEL, Appellants

## V.

## GAYLON BIRDWELL, Appellee

**On Appeal from the 33rd District Court**
**Burnet County, Texas**
**Trial Court Cause No. 38102**

## M E M O R A N D U M   O P I N I O N

Gaylon Birdwell[1] sued Gary Domel and Kim Domel for negligent misrepresentation and other claims that arose out of Birdwell's purchase of Angelfire Ranch (the Ranch) from the Domels (Appellants). Prior to the sale, Appellants failed to disclose previous flooding in the Ranch's two houses, the receipt of an insurance settlement for hailstorm damage to metal roofs on the

---

[1]Patsy Birdwell, Gaylon's wife, was a plaintiff as well, but she passed away approximately six months before trial.

Ranch's buildings, and the use of the settlement funds for purposes other than to replace the damaged roofs. The jury awarded Birdwell damages under multiple theories of liability. At Birdwell's election, the trial court entered a judgment in his favor for $306,087.77 against Appellants for negligent misrepresentation.[2] Appellants assert eleven issues on appeal. We affirm.

## I. *Background Facts and Trial Evidence*

The Ranch is a 120-acre estate located in the Texas Hill Country near Marble Falls. The Ranch has high perimeter fencing; a 6,000 square foot main house with a four-car garage; an infinity pool with a hot tub; a six-stall horse stable with a wash and tack area; a walker and separate hay barn; a 17,000 square foot, lighted riding arena; and an 1,800 square foot guest or foreman's house.[3] The Ranch also has numerous trees, several head of exotic game, and two lakes stocked with Florida bass.

Appellants engaged Michael King Waite, a real estate broker, as their listing agent and listed the Ranch for sale in 2008, after they had lived there for several years, because they wanted to live closer to their Austin businesses. After Waite looked at the Ranch, he suggested that Appellants list the Ranch for $3 million because he thought its value was in the range of $2.4 million to $2.85 million. Appellants decided to list the Ranch for $3.2 million in 2008 but lowered the price in April 2009 to $2.7 million.

---

[2]The judgment included $264,926 in damages, plus $67,000 in attorneys' fees, $19,161.77 in prejudgment interest, and postjudgment interest of five percent per annum with a settlement credit for $45,000. Birdwell settled his claims against codefendant, Derris William Lanier d/b/a Lanier Inspections, for $45,000. Lanier Inspections was the property inspection company that Birdwell had hired to inspect the Ranch prior to the sale.

[3]The Ranch also had a tractor and storage barn and a small one-car garage that was connected by a breezeway to the guest or foreman's house.

Waite had Appellants fill out the Seller's Disclosure Notice (the Notice), sign it, and then return it to him.[4] Both Waite and Appellants acknowledged that the Notice indicated that Appellants agreed to amend any applicable notices and disclosures during the listing. The Notice was the only one that Appellants filled out and gave to Waite. Waite testified that Appellants never told him about a hailstorm in March 2009 at the Ranch and did not mention any insurance settlements for roof repair or replacement. Waite also said that he was not told of prior flooding inside the main house or the attached guest house.

Waite said that the Notice was given to Birdwell. After some negotiation, Birdwell agreed to pay $2.6 million for the Ranch and deposited $25,000 earnest money. Birdwell said that he received Appellants' Notice and relied on the statements that there had been no prior flooding in the structures, that there had been no prior insurance settlements, and that there had been no prior damage to the roofs on the Ranch's buildings. Birdwell had Lanier Inspections inspect the property. Birdwell said that they negotiated some additional items for purchase and some repairs to chimney flashing. Birdwell asked Waite when the flashing repair would be done, and Birdwell agreed to Waite's suggestion that it could be done after closing. Later, Waite hired Cornerstone Roofing and Remodeling to repair the flashing. Juan Reyes, the owner of Cornerstone Roofing, testified that he is a member of the National Roofing Contractors Association, a member of the Better Business Bureau, and a certified GAF master elite contractor. Reyes does new construction roofs and does repair and replacement of roofs, including metal, shingle, and tile.

Reyes testified that he noticed a problem with the roof and told the Ranch's new owner, Birdwell, that the roof was "totaled" and needed to be replaced. Reyes inspected all of the roofs at the Ranch and said that all of them needed to be

[4]Kim Domel initialed each page of the Notice but did not sign on the signature line.

replaced, which would cost $280,000. Reyes said he was unaware that Appellants had made a hailstorm damage claim for the roofs, but he was not surprised that there had been a hailstorm damage claim and a settlement for roof damage. He said that the hailstorm was the probable cause of the roof damage. Reyes said Birdwell called Waite and told him about the roofs, and Birdwell said Waite was surprised. Waite said that the first time he heard about roof damage from a hailstorm was when Reyes and Birdwell called him.

Upon being contacted by Waite, Kim Domel did not deny that an insurance claim had been filed, but Gary Domel said that the roofs were not damaged severely enough to need replacement and that Appellants had dropped the price significantly. Gary Domel testified that the roof of the main house was nine years old and that he had tightened some of the loose screws on the roof. He admitted that he had checked "no" on the Notice to indicate that he had not received any insurance settlements for damages to the Ranch.

Gary Domel testified that he was not at the Ranch when the hailstorm occurred. He said that there was hail damage to the pool deck, siding, and the screen porch and that some windows were broken. He also said that, after the hailstorm, he could not tell whether the roof of the main house was damaged but that he saw "nothing" that required repair or replacement and did not make any repairs because "there [were] no leaks." Gary Domel said the roof "looked better than every other roof [he had] ever seen." He admitted that he made an insurance claim for hailstorm damage and that he received a check for $114,650.04. The amount for the replacement cost coverage for the roofs was $139,926.83. Gary Domel said that he did not need to spend the $114,650.04 on the roofs because the roof of the main house was "sound" and "bulletproof."

Gary Domel also said that the Notice was true on the date of closing in November 2009 and that he did not think that the insurance settlement was

something that had to be disclosed to Birdwell.  Gary Domel said that he "didn't think about it.  [He] had no reason to think about it."  He said he checked "no" on the maintenance part of the Notice because he could not think of anything that was in need of repair or replacement.  Gary Domel testified that the insurance settlement for the roofs was for "cosmetic damage" and that he did not use the settlement funds to repair or replace the roofs.

Kim Domel testified that she relied on her husband and followed his directions when asked to sign documents; she did not review or read them.  She said that sellers should let buyers know if something, like a dishwasher, does not work, but she did not think that a seller had to disclose an insurance settlement if everything had been repaired.  Kim Domel said that she was not at the Ranch when the hailstorm occurred and that her employees were wrong when they said that she was; she also denied telling her employees that she had received a $150,000 insurance check for roof damage and that she was going to buy a new Mercedes.

Ginny Dean Dukes was the ranch hand who took care of horses and game at the Ranch, and he lived in the foreman's house.[5]  Dukes said that he was at the Ranch when the hailstorm hit in March 2009, that Appellants were also there, and that the storm was severe.  According to Dukes, everyone hid in one of the master bedroom closets in the main house.  He said that he saw the adjusters at the Ranch looking at the hail damage on the roofs, buildings, pool deck, and siding.

Mary Jo Callaway was a nanny for Appellants' children and lived for a time at the Ranch.  She said that Appellants were there when the hailstorm hit in 2009 and that everyone hid in the closet.

Rita Kay Kirby worked as a housekeeper for Appellants and helped look after Appellants' children.  Dukes, Kirby, and Callaway all testified that Kim Domel said that she had received an insurance check for $150,000 and that she was

---

[5]Dukes previously worked for Appellants, but at the time of trial, he worked for Birdwell.

going to buy a new Mercedes.  Dukes and Kirby said that Kim Domel had the check in her hand and made the comments in front of them while everyone was out on the porch.

Gary Domel admitted that he had also made an insurance claim for water damage inside the main house, but on the Notice, he indicated that there had been no flooding inside the structures.  Gary Domel said that, in 2007 when nineteen inches of rain fell in a matter of hours, he had four stock tanks that were breached and had to be rebuilt, as did part of the high perimeter fencing.  He said that he also lost some animals.  Gary Domel admitted that there was water penetration at the baseboard level of the wall studs, which happened when eaves or drains clogged up with leaves and caused water to come in, but he said that this was from water "runoff," not a flood. Gary Domel said he did not amend the Notice because he did not think of it and no one asked him to amend it.  Gary Domel also said that he had been "insulted" by the $2.4 million offer on a property that had been listed at $3.2 million and that he accepted the lower price only because the sale was "as is" and in its "present condition."  He also believed the prior flooding did not have a material adverse effect on the use of the Ranch.

Birdwell testified that, after he talked to Reyes and Waite, he checked with his insurance company and discovered that Appellants had a prior insurance claim and settlement on the roofs for hail damage.  Birdwell said he learned about prior flooding in the main and guest houses from Dukes and Callaway.  Dukes said that there was flooding in both the main and guest houses during a rainstorm in 2007; he helped clean it up.  Callaway said that, in 2007, there was a flood and that there was about two inches of water on the floor of the main house and the attached guest house; she also helped clean up the water.

Birdwell said that he would have liked to have known about the roofs, insurance settlement, and prior flooding beforehand and that, had he known, he

would not have purchased the Ranch. Birdwell said that he had trouble getting insurance for the Ranch because of the condition of the roofs, that the Ranch was worth $280,000 less because of the damaged roofs, that he could not recoup the additional $240,000 in improvements that he had made,[6] and that he planned to sell the property. Birdwell said that Appellants never told him about the prior flooding, the insurance settlement, or the roof damage. Birdwell said there was flooding in the house after he took possession.

Lanier, a real estate inspector, inspected the Ranch on Birdwell's behalf. Lanier said that he did not get on the roofs during the first inspection and that he only viewed the roofs from a ladder. Lanier testified that Gary Domel had said nothing about a hailstorm and had told Lanier that the roofs were fine, that they had been fixed, that nothing was wrong with them, and that there was nothing to worry about in connection with the roofs. Lanier also said that Appellants never mentioned the $114,650.04 settlement check. Lanier said that Gary Domel was very upset and defensive with Lanier's property inspection reports because of the number of things that Lanier listed that needed to be repaired. Dukes said that Gary Domel was frustrated by Lanier's inspection. Further, Dukes testified that, just prior to closing, Kim Domel told Dukes and other workers not to say anything if they saw something wrong with the Ranch while they were cleaning it.

Donald Raymond Putnam, who was retained by Appellants, testified as an expert on roofs and roof construction.[7] Putnam said that he inspected the roofs at the Ranch and that, although the roofs had some loose screws, algae and rust, some minor panel kinks, oil-canning, dents, flashing problems, and a few crushed panels,

---

[6]Birdwell said that, once he and his wife took possession, they removed and replaced the cabinets in the main house, had the entire house retextured and repainted, covered the concrete floors, and replaced the window treatments—for a total renovation cost of approximately $240,000.

[7]Putnam indicated that he had been paid more than $15,000 for his opinions in this case, but he had not done a cost estimate on the replacement of roofs at the Ranch.

the roofs did not need repair or replacement. Putnam said that the crushed panels were not from hail and that, except for a few shallow dents, the dents did not look like they were caused by hail.

This case was ultimately tried to a jury on breach of contract, negligent misrepresentation, DTPA, and fraud claims. Several written admissions made by Appellants were read at trial. Appellants admitted that they were aware of a hailstorm that hit the Ranch after they had signed their Notice, that there were damaged roof panels at the residence of the Ranch, and that they made an insurance claim for damaged metal roof panels. They also admitted that the residence sustained roof damage while they owned the Ranch, that there was hail damage that occurred after they signed the Notice but before they closed on the sale of the Ranch, and that they received an insurance settlement check for a covered loss for metal roof panels at the Ranch. Appellants further admitted that they did not use the insurance settlement check to replace the metal roof panels on the residence or complete any repairs to the metal roof panels.

## II. *Issues Presented*

Appellants assert eleven issues on appeal. In their first issue, Appellants assert that they had no duty to update their Notice. In their second issue, they assert that there was factually insufficient evidence to support reliance and causation. In their third issue, Appellants assert that there is no evidence of market value of the Ranch. Appellants assert in their fourth issue that the State Farm claim file was improperly admitted as evidence. Appellants argue in their fifth issue that there was no evidence to support an award of future damages, and in their sixth issue, they complain that the award for roof replacement and future damages was an impermissible double recovery. In their seventh issue, Appellants complain that attorneys' fees are not recoverable in a negligent misrepresentation claim. Appellants argue in their eighth issue that the trial court erred when it

8

awarded prejudgment interest on future damages. Appellants take the position in their ninth issue that Birdwell's tort claims are barred by the economic loss rule. The basis of Appellants' tenth issue is that that there was factually insufficient evidence to award damages to replace the roofs. Finally, in Appellants' eleventh issue, they maintain that Birdwell's claims for DTPA and fraud fail because they owed no duty to Birdwell and because there is factually insufficient evidence to support reliance and causation.

### III. *Standard of Review*

Appellants assert both legal and factual sufficiency challenges. When we conduct a legal sufficiency review, we review the evidence in a light that tends to support the disputed finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). We "assess all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in favor of the judgment." *City of Austin Police Dep't v. Brown*, 96 S.W.3d 588, 593 (Tex. App.—Austin 2002, pet. dism'd) (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). If more than a scintilla of evidence supports the challenged finding, the no-evidence challenge must fail. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999). We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

For a factual sufficiency review, we examine all the evidence in the record, both for and against the lower court's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We must consider and weigh all such evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). But "[j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another." *City of Keller*, 168 S.W.3d at 819 (footnote omitted). If the evidence at trial would enable reasonable minds to differ in their conclusions, we do not substitute our judgment, so long as the evidence falls within a zone of reasonable disagreement. *Id.* at 822. In considering and weighing all of the evidence, we will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

IV. *Discussion and Analysis*

A. *Issue Number I: Duty to Disclose or Update Information*

Appellants assert in their first issue that the trial court erred in ruling that Appellants had a duty to update their Notice. The Seller's Disclosure of Property Condition Notice is a document used to apprise a potential buyer of the condition of real property that is for sale. *See* TEX. PROP. CODE ANN. § 5.008 (West Supp. 2014). Section 5.008(a) of the Texas Property Code provides:

> A seller of residential real property comprising not more than one dwelling unit located in this state shall give to the purchaser of the property a written notice as prescribed by this section or a written notice substantially similar to the notice prescribed by this section which contains, at a minimum, all of the items in the notice prescribed by this section.

Section 5.008(b) outlines the content that the disclosure notice must cover. Appellants correctly state that Section 5.008 does not create, in itself, a continuing

duty or obligation to update matters within the form after the date the notice was completed. *See Bynum v. Prudential Residential Servs., Ltd. P'ship*, 129 S.W.3d 781, 795 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). We note that the Texas Supreme Court has held that a seller has no duty to disclose facts that he does not know. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995) (citing *Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex.1982)).

However, a seller of real estate is under a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence on the part of the purchaser or that a reasonable investigation and inquiry would not uncover. *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied) (citing *Smith v. Nat'l Resort Cmtys., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979)). In addition, a duty to disclose may arise in four other situations: (1) when there is a confidential or fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression. *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Omni Metals, Inc. v. Poe & Brown of Texas, Inc.*, No. 14-00-01081-CV, 2002 WL 1331720 (Tex. App.—Houston [14th Dist.] June 13, 2002, pet. denied) (not designated for publication); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 635 (Tex. App.—San Antonio 1993, writ denied).

Even in the absence of a confidential relationship, when one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue. *Cone v. Fagadau Energy Corp.*, 68 S.W.3d 147, 168 (Tex. App.—Eastland 2001, pet.

denied) (citing *Susanoil, Inc. v. Cont'l Oil Co.*, 519 S.W.2d 230, 236 n.6 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.)). In addition, as the *Prudential* court and several other Texas courts have noted, a general duty to disclose information in an arm's-length business transaction may arise when a party makes a partial disclosure that, although true, conveys a false impression. *Prudential Ins.*, 896 S.W.2d at 162; *see, e.g.*, *Bradford*, 48 S.W.3d at 755–56; *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Ralston Purina*, 850 S.W.2d at 636.

A corollary principle is that, when there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts. *Smith*, 585 S.W.2d at 658 (citing *Rowntree v. Rice*, 426 S.W.2d 890 (Tex. Civ. App.—San Antonio 1968, writ ref'd n.r.e.)). Silence, therefore, can be equivalent to a false representation when there is a duty to speak and the party deliberately remains silent. *Bradford*, 48 S.W.3d at 755; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995); *Smith*, 585 S.W.2d at 658.

Appellants filled out their Notice when they first listed the Ranch for sale in 2008. They relisted it in April 2009. When Birdwell received the Notice in October 2009, there had been a hailstorm at the Ranch that resulted in roof and other damages, and Appellants had filed a hailstorm damage claim and received a settlement but had not replaced the roofs. Appellants never updated the Notice or disclosed any of this information to Birdwell. Notably, Appellants had not informed their broker, Waite, of the hailstorm and settlement. Appellants' delivery to Birdwell of the nearly one-year-old Notice without clarification or comment was misleading and left a false impression, and Appellants had a duty to correct that misleading and false impression.

In addition, Appellants reported that there had been prior flooding at the Ranch, but they failed to disclose that it had occurred in both the main house and in

the guest house. This was both an affirmative misrepresentation and a partial disclosure; Appellants failed to provide the whole truth. As such, the Notice was both false and misleading. In addition, there was testimony at trial from Lanier that he had tried to inspect the roofs on two occasions and that Appellants had told him that the roofs were fine and were not leaking. Given that the statements contained in the Notice were no longer true when the Notice was given to Birdwell, Appellants had a common-law duty to disclose the whole truth, correct any misstatements or false impressions, and disclose material information—like the insurance claim and payment for roof damage—that would not have been discoverable through ordinary and reasonable diligence. We overrule Appellants' first issue.

*B. Issue Number II: Reliance and Causation*

In their second issue, Appellants assert that there was factually insufficient evidence to support the jury's findings on the elements of reliance and causation. The elements of negligent misrepresentation are the following:

(1)     the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

(2)     the defendant supplies "false information" for the guidance of others in their business;

(3)     the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4)     the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting RESTATEMENT (SECOND) OF TORTS § 552 (1977)); *see McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.

1999).  Appellants argue that Birdwell could not justifiably rely on their representations in the Notice in light of the "as is" disclaimer in it.

Reliance has two elements.  *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).  First, the plaintiff must actually rely on the misinformation to his detriment by either basing his conduct on it or refraining from action because of it.  *Id.*  Second, reliance must have been justified or reasonable.  *Id.*; *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).  Justifiable reliance is proven when the injured party would not have completed the purchase absent the misrepresentation.  *Ferguson v. DRG/Colony N., Ltd.*, 764 S.W.2d 874, 884–85 (Tex. App.—Austin 1989, writ denied).

Birdwell also must prove that Appellants' misrepresentation was a proximate cause of his damages.  *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 250 (Tex. App.—Waco 2001, pet. denied).  Proximate cause is both (1) cause in fact and (2) foreseeability.  *Id.* (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)).  This requires proof that an act or omission was a substantial factor in bringing about injury that would not otherwise have occurred. *Prudential Ins.*, 896 S.W.2d at 161 (citing *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980)).

In *Ferguson*, the buyer of an apartment complex sued the seller for failing to repair or replace the roof on an apartment complex.  764 S.W.2d at 877.  The seller had promised to make them watertight.  *Id.* at 881.  Without that representation, the buyer would not have purchased the property.  *Id.* at 884–85.  The jury found that the buyer relied on the seller's promise to repair the roofs.  *Id.* at 884.  There was unequivocal testimony from the buyer that he would not have gone through with the purchase of the apartment complex without the agreement to make the roofs watertight.  *Id.* at 884–85.  The *Ferguson* court held this was sufficient to prove

that the promise to repair the roofs was an inducing cause of the seller's completion of the purchase. *Id.* at 885.

In this case, there was unequivocal testimony from Birdwell that he would not have purchased the Ranch had he been told about the prior flooding and the unrepaired hail damage to the roofs. The jury found that Birdwell justifiably relied on the representations of Appellants that (1) the roofs were fine, were not leaking, and needed no repair; (2) Appellants had not received an insurance claim payment for hail damage to the roofs; (3) Appellants had not received any insurance claim payments for hail damage that had not been fully used to repair the damage; and (4) when Appellants disclosed the fact that certain flooding had occurred, they failed to disclose that the main house and guest house also had flooded. In addition, it was foreseeable to Appellants that a potential buyer would want to know about both of the prior instances of flooding, as well as the hail damage to the buildings on the Ranch. Appellants' misrepresentations were a substantial factor or inducing cause and, thus, constitute the cause-in-fact of Birdwell's damages.

Appellants point to the disclaimer in the Notice and the "as is" language in the contract and argue that the responsibility, and liability, for determining the condition of the property lies with Birdwell. A valid "as is" agreement can prevent a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is impossible for the buyer's injury on account of this disparity to have been caused by the seller. *Prudential Ins.*, 896 S.W.2d at 161 (citing *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv. Inc.*, 572 S.W.2d 308, 313 (Tex. 1978) (the buyer "has taken the entire risk as to the quality of the [property] and the resulting loss")). But this statement of the law is not applicable where the seller has actual knowledge of information material to the transaction and withholds that information from the buyer. The *Prudential* court

pointed out that, in such a situation, the "as is" clause is not a shield from liability. *Id.*

Appellants withheld the information about the insurance claim settlement and their failure to use it to repair or replace the roofs, which is not something that Birdwell would have discovered in the ordinary course of inspecting the property. That is especially true when Appellants affirmatively represented that the opposite had occurred: there had been no hail damage, no insurance claims or payments, and no damage to the roofs. We have reviewed the record, and we cannot conclude that the jury's findings—that Birdwell justifiably relied on Appellants' misrepresentations and that those misrepresentations proximately caused his damages—were against the great weight and preponderance of the evidence. We overrule Appellants' second issue.

*C. Issue Number III: Market Value*

Appellants assert in their third issue that, because there is no evidence of market value, the jury was not able to award damages for the difference in value between what was given and what was received. In negligent misrepresentation cases, two types of damages are recoverable to compensate a plaintiff for a legal injury caused by the defendant's misrepresentation:

    (a)    the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

    (b)    pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

*Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App.—El Paso 1992, writ denied). Damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant. *Sloane*, 825 S.W.2d at 442 (citing RESTATEMENT (SECOND) OF TORTS

16

§ 552B (1977)). Negligent misrepresentation is restricted to the out-of-pocket measure of damages because it "implicates only the duty of *care* in supplying commercial information; honesty or good faith is no defense." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998).

A property owner is qualified to testify to the value of his property even if he is not an expert and would not be qualified to testify to the value of other property. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011) (citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). The rule is based on the presumption that an owner will be familiar with his own property and know its value. *See id.* But in order for a property owner to qualify as a witness to discuss damages to his property or its decline in market value, "his testimony must show that it refers to market, rather than intrinsic or some other value of the property. This requirement is usually met by asking the witness if he is familiar with the market value of his property." *Porras*, 675 S.W.2d at 504–05.

Birdwell testified that he was familiar with the Ranch and that he had paid $2.6 million for the Ranch. The contract and final settlement statement reflected that purchase price. Birdwell testified that the Ranch he received was worth $280,000 less than what he paid for it. The jury determined that the difference between the value of what Birdwell paid and what he received was $139,926. The jury has broad discretion to award damages within the range of evidence presented at trial. *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied) (citing *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002)). And we may not set aside a jury's findings merely because they are unclear. *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.). When the jury's award is within the range of damages supported by the trial evidence, we are not permitted to speculate on how the jury arrived at its award. *Id.* We hold that there was some evidence to support

the jury award of $139,926 for the difference in value received versus value paid. We overrule Appellants' third issue.

*D. Issue Number IV: Admission of Plaintiff's Exhibit 55*

Appellants assert in Issue Four that the trial court erred when it admitted Plaintiff's Exhibit 55, an insurance document, into evidence. We review a trial court's decision on the admission or exclusion of evidence under an abuse of discretion standard because evidentiary rulings are within the sound discretion of the trial court. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (citing *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam)). But when the trial court acts without regard for guiding rules or principles, it abuses its discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We reverse only when the trial court's error in admitting or excluding evidence probably resulted in an improper judgment. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

Reversible error does not usually occur on the erroneous admission or exclusion of evidence unless the complaining party can demonstrate that the whole case turns on the excluded or admitted evidence. *Riggs v. Sentry Ins.*, 821 S.W.2d 701, 708–09 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (citing *Stevenson v. Koutzarov*, 795 S.W.2d 313, 318 (Tex. App.—Houston [1st Dist.] 1990, writ denied)); *see Univ. of Tex. at Austin v. Hinton*, 822 S.W.2d 197, 203 (Tex. App.—Austin 1991, no writ). In this case, the trial court admitted, as Plaintiff's Exhibit 55, a collection of documents from a State Farm insurance claim file in which the prior hail damage was noted, as well as the estimate for repair of the hail damage. The exhibit also contained a copy of the check that had been issued in payment of the claim. The total estimated replacement cost for the roofs was $139,926.83. Appellants argue that this exhibit was hearsay and was improperly admitted and resulted in an improper judgment because the jury's

award for roof repairs and diminution in value was the same amount as the State Farm estimate in the exhibit. Birdwell contends that the exhibit was admissible as proof that Appellants had prior knowledge of roof damage.

One element of negligent misrepresentation is that the defendant supplied false information for the guidance of the plaintiff in deciding whether to purchase the subject property. *Sloane*, 825 S.W.2d at 442. The information in Plaintiff's Exhibit 55 was evidence of what Appellants knew about the damage to the roofs of the buildings on the Ranch. In their Notice, Appellants did not disclose the prior hail damage; they only noted that some sheet metal screws needed to be replaced. The information in the exhibit could have been used to question Appellants and to impeach them, and the exhibit could have been admitted as a business record with a sponsoring witness.

We note, however, that the exhibit was admitted prior to trial, as part of the pretrial review of the exhibits, and that no sponsoring witness or affidavit was used to lay a business records foundation for admission. We hold that the exhibit was inadmissible without the business records foundation. TEX. R. EVID. 803(6); *see Good v. Baker*, 339 S.W.3d 260, 273 (Tex. App.—Texarkana 2011, pet. denied).

But the jury heard witnesses describe the hailstorm and heard Appellants testify about their involvement with State Farm and the specifics of their hailstorm damage claim. The jury also saw pictures of the hailstorm damage and heard testimony about Appellants' receipt of the insurance claim check, their failure to use it to repair hailstorm roof damage, and their comments on how they intended to and did use the settlement funds. Furthermore, the jury heard conflicting evidence on the condition of the roofs and the costs for repair or replacement: Appellants described the roofs as absolutely "bulletproof" with "no damage" and no needed repair, but Reyes told Birdwell that the roofs were "totaled" and needed to be replaced. In light of all the evidence adduced at trial, the contents of the claim file

19

were cumulative, and any error in its admittance was harmless. *Puentes v. Fannie Mae*, 350 S.W.3d 732, 738 (Tex. App.—El Paso 2011, pet. dism'd w.o.j.) (citing *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009)). We overrule Appellants' fourth issue.

*E. Issue Number V: Future Damages*

Appellants complain in their fifth issue that there was no evidence to support the jury's award of future damages. For future damages, Texas follows the reasonable probability rule. Under that rule, a plaintiff must (1) present evidence that, in reasonable probability, it will incur expenses in the future and (2) prove the probable reasonable amount of the future expenses. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 654–55 (Tex. 1999); *Securitycomm Grp., Inc. v. Brocail*, No. 14-09-00295-CV, 2010 WL 5514333 (Tex. App.—Houston [14th Dist.] Dec. 28, 2010, pet. denied) (mem. op.).

The jury heard evidence that Birdwell would not have purchased the property had he been told of the prior hail damage and flooding. The jury saw documents in which Appellants failed to disclose both the full extent of prior flooding and the fact that they had received insurance payments to repair the roofs but did not use the payments to complete repairs. Furthermore, the jury heard evidence that Birdwell intended to sell the Ranch. In addition, the jury heard testimony that Birdwell paid $2.6 million for the Ranch, but Birdwell said he would not have bought it had he known of the roof and flooding issues. Birdwell also said that he intended to sell it, which would involve a sales transaction cost, such as a broker's fee, on any future sale. The jury awarded $125,000 in future damages. The total broker's fee on the sale of the Ranch to Birdwell was $156,000; Birdwell could expect that a similar, although smaller, fee would be incurred on his future sale. After reviewing the record and indulging every inference in favor of the judgment, we hold that there was some evidence that

Birdwell would incur expenses in the future when he sold the Ranch and that there was also evidence of the amount of future damages. We overrule Appellants' fifth issue.

*F. Issue Number VII: Attorneys' Fees*

Appellants' seventh issue complains that attorneys' fees are not recoverable in a negligent misrepresentation claim. Attorneys' fees may be recovered from an opposing party only when permitted by statute or by contract. *Williams v. Colthurst*, 253 S.W.3d 353, 362 (Tex. App.—Eastland 2008, no pet.) (citing *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999)). In this case, Appellants signed a contract that provided in part: "A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding." "Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009).

Birdwell sought and recovered money damages and has prevailed in this action. As the prevailing party, Birdwell was entitled to recover attorneys' fees because the parties' contract provided for such recovery. *See Podder v. Funding Partners L.P.*, No. 03-09-00458-CV, 2010 WL 850175, at *5 (Tex. App.—Austin Mar. 12, 2010, pet. denied) (mem. op.) (recovery of attorneys' fees permitted when contract provided for fee recovery for any legal proceeding related to contract); *see also Sierra Assoc. Grp., Inc. v. Hardeman*, No. 03-08-00324-CV, 2009 WL 416465 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.) (attorneys' fees recoverable for tort claims that dealt with contract when contract provided for recovery of attorneys' fees in any legal action related to contract). Appellants argue that Birdwell had to segregate the fees for the various claims advanced, but

the parties' contract did not impose such a requirement.  We overrule Appellants' seventh issue.

### G. Issue Number VIII: Prejudgment Interest

Appellants, by their eighth issue, assert that the trial court erred when it awarded prejudgment interest on future damages.  Under Texas law, prejudgment interest is an additional damage award for the loss of use of money between the time of the accrual of the claim and the date of the judgment.  *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998).  Two separate grounds exist in Texas for prejudgment interest: (1) an enabling statute and (2) general principles of equity.  *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex. 1978).  The former applies to judgments for credit transactions, wrongful death, personal injury, property damage, and condemnation cases, while the latter applies, under common law, to a breach of contract claim.  TEX. FIN. CODE ANN. §§ 302.002, 304.102, 304.201 (West 2006); *Kenneco*, 962 S.W.2d at 530; *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi 2001, no pet.).  However, prejudgment interest may not be assessed or recovered on an award of future damages.  FIN. § 304.1045.  Compensation other than for the lost use of money is a windfall, penalty, or fine, not "interest."  *Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 907 (Tex. 2005).  In this case, the trial court calculated prejudgment interest on the damages award, and Appellants did not object to the calculation.  Appellants have waived this issue on appeal.  TEX. R. APP. P. 33.1; *see, e.g.*, *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 694 (Tex. App.—Dallas 1987, writ denied) (failure to object to trial court concerning its error in judgment in failing to award prejudgment interest waived error on appeal).  We overrule Appellants' eighth issue.

*H. Issue Number IX: Independent Injury Doctrine*

In their ninth issue, Appellants assert that Birdwell's tort claims are barred by the economic loss rule. The economic loss rule, also known as the independent injury doctrine, precludes a tort cause of action when (1) the claim is for breach of a duty created solely by contract instead of a duty imposed by law and (2) the only injury is the economic loss to the subject of the contract itself. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (required inquiry is whether source of the duty arises from the contract or from common law along with analysis of remedy sought by plaintiff). Texas jurisprudence has long recognized the coexistence of obligations and duties separately imposed by contract and tort. *Carousel's Creamery, L.L.C. v. Marble Slab Creamery, Inc.*, 134 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd by agr.) (citing *MCN Energy Enters., Inc. v. Omagro de Colombia, L.D.C.*, 98 S.W.3d 766, 772 (Tex. App.—Fort Worth 2003, pet. denied)); *see Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see also McCamish*, 991 S.W.2d at 792 (Section 552 imposes a duty to avoid negligent misrepresentation, irrespective of privity).

Birdwell advanced negligent misrepresentation claims against Appellants based on their common-law duty to fully disclose material facts when making voluntary representations about prior flooding, roof damage, insurance payments for hail damage, and the lack of roof repairs after the insurance settlement, all of which were relied upon by Birdwell and were misleading or left a false impression because they were either at one time true, but no longer true, or they were simply false. Also, Birdwell's damages were not limited to economic loss from the original contract. Birdwell's damages arise not from the contract but, as we have previously explained, from the common-law duty of disclosure that Appellants breached when they made misleading or false representations that resulted in

23

damages independent of the sales price of the Ranch. We overrule Appellants' ninth issue.

### I. Issues X, VI & XI: Roof Damages, Double Recovery, and Other Claims

In their tenth, sixth, and eleventh issues, Appellants complain that there was factually insufficient evidence to support the award for roof replacement damages; that roof replacement damages and future damages for roof repair constituted a double recovery; and that there was legally and factually insufficient evidence to support the duty, reliance, and causation elements of Birdwell's DTPA and other claims. Birdwell did not elect to recover under the DTPA or the other theories, and the final judgment did not award either current or future cost of repair for the roofs. The final judgment did not include recovery under the alternate theories; Birdwell elected to recover under negligent misrepresentation and obtained damages under that theory, including damages computed as the difference in the value received versus the value paid and also future damages. Because we have found that Birdwell's recovery under negligent misrepresentation was supported by the evidence, as explained above, we need not address these remaining issues raised by Appellants. *See* TEX. R. APP. P. 47.1.

### V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON
JUSTICE


August 29, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.